**BONNER KIERNAN TREBACH & CROCIATA LLP**
**BY: JAMES F. LYNN, ESQUIRE**
**IDENTIFICATION NO: 53838**
**TEN PENN CENTER, SUITE 770**
**1801 MARKET STREET**
**PHILADELPHIA, PA  19103**
**(215) 569-4433**
*Attorney for Defendant, Marmaxx Operating Corp. (Improperly named as TJX Companies/Marshalls)*

| | |
|---|---|
| MARLENE VARANAVAGE<br><br>                                         Plaintiff<br><br>           v.<br><br>TJX COMPANIES/MARSHALLS<br><br>                                         Defendant | IN THE UNITED STATES<br>DISTRICT COURT EASTERN<br>DISTRICT OF PENNSYLVANIA<br><br>CIVIL ACTION NO.<br>2:19-cv-00461-JHS |

**DEFENDANT'S CONCISE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Marmaxx Operating Corp. (Improperly named as TJX Companies/Marshalls) (hereafter "Moving Defendant"),  by and through its counsel of record, Bonner Kiernan Trebach & Crociata LLP, herewith files this Concise Statement of Undisputed Facts in Support of Defendant's Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56 and Judge Slomsky's Policies and Procedures, and states as follows:

1. On January 4, 2019, Plaintiff initiated this action by filing a Complaint in the Philadelphia Court of Common Pleas. *See* Plaintiff's Complaint attached hereto as Exhibit "A."

2. In her Complaint, Plaintiff improperly named TJX Companies/Marshalls as Defendant.  *See* Exhibit "A," at ¶¶2.

3. The proper Defendant is Marmaxx Operating Corp., which operated the store. *See* Answer of Defendant, Marmaxx Operating Corp. (Improperly named as TJX Companies/Marshalls) to Plaintiff's Complaint with Affirmative Defenses attached hereto as Exhibit "B."

1

4. Plaintiff, Marlene Varanavage, contends that on January 24, 2017, she was caused to slip and fall by reason of coming in contact with a liquid on the floor of the Marshalls, located at 9169 Roosevelt Boulevard, Philadelphia, Pennsylvania. *See* Exhibit "A," at ¶¶3-7.

5. On January 31, 2019, Moving Defendant timely and properly removed this matter based upon diversity jurisdiction under 28 U.S.C. §1332. *See* Notice of Removal attached hereto as Exhibit "C."

6. Plaintiff is seeking damages for bodily injuries she allegedly sustained as a result of the slip and fall. *See* Exhibit "A," at ¶¶11.

7. Plaintiff was a business invitee.

8. On April 30, 2019, Plaintiff was deposed. *See* relevant portions of deposition transcript of Plaintiff, Marlene Varanavage, taken on April 30, 2019, a true and correct copy of which is attached hereto as Exhibit "D."

9. In relevant part, Plaintiff testified to the following:

```
24    Q.    Did you spill this stainless steel cleaner
                                                    Page 105
 1   on the floor?
 2    A.    No.
 3    Q.    Do you know who did?
 4    A.    No.
 5    Q.    Do you know how long it was there?
 6    A.    No.
 7    Q.    Do you have any evidence that an employee
 8   of Marshalls spilled this on the floor?
 9    A.    No.
10    Q.    Do you have any idea, was there anything
11   about -- let me ask you this.  My understanding is,
12   based upon your testimony, that you were not looking
13   down, you were looking at clothes?
14    A.    Uh-huh.
15    Q.    Correct?
16    A.    Yeah.
17    Q.    So you didn't see this on the floor,
18   correct?
19    A.    Correct.
20    Q.    Is it also you didn't see it on the floor
21   because it was clear?  Do you know if that's one of
22   the reasons?
23    A.    Probably, yeah, it was clear.
24    Q.    Did you see any anything -- was there
```

```
Page 106
1  anything about this puddle that would lead you to
2  believe how long it may have been there?
3     A.  No.
4     Q.  Would you agree with me that it's
5  impossible for anyone to know how long that puddle
6  was there before you actually stepped upon it?
7     A.  Yes.
8     Q.  As you sit here today, do you have any
9  evidence that any employee of Marshalls was aware
10 that that puddle was there before you reported it?
11    A.  No.
```

*See* Exhibit "D," at Page 104, line 24 to Page 106, line 11.

    10.       Plaintiff further testified to the following:

```
12    Q.  How much of that puddle was hidden
13 underneath the clothes racks and how much of that
14 puddle was exposed?
15    A.  Most of it was hidden under the rack.
16    Q.  How much of the puddle was actually
17 outside of the clothing rack?
18    A.  I guess about like nine to ten inches,
19 approximately.
20    Q.  So now you're saying that --
21    A.  I'm just trying to figure this out in my
22 head because I wasn't looking down.  I'm looking at
23 clothes.  So when I fell, when I looked down, there
24 was an oil substance on the floor.  So it's on my
```

```
Page 103
1  coat.  It's on my pants.  I can't give you an exact
2  dimension of how much oil was on the floor.
3     Q.  Well, you did do that.  Listen, you told
4  me that the puddle, once fully exposed, was about 14
5  to 16 inches wide --
6     A.  Right.
7     Q.  -- and 14 to 16 long or high, however you
8  want to describe it.
9     A.  Right.
10    Q.  You also told me that the majority of that
11 puddle, before the clothes rack was removed, was
12 hidden underneath the clothes rack, correct?
13    A.  Right.
14    Q.  Then what I'm trying to figure out was how
15 much of it was exposed onto the actual walkway?
16    A.  I'm not sure.  Actually, I'm not sure.
17    Q.  But still most of it was hidden
18 underneath, only some of it was sticking out because
19 you know you slipped on it?
20    A.  Exactly, yes.
21    Q.  The first time you saw it was -- was the
22 first time you saw the liquid on the floor only
23 after the clothes rack was moved?
24    A.  Yes.
```

```
                                                              Page 104
 1   Q.  So then once the clothes rack's removed,
 2   you really didn't have an opportunity to see the
 3   puddle before the clothes rack was removed, correct?
 4   A.  That's correct.
 5   Q.  That is why it makes it difficult for you
 6   to estimate how much of it was actually sticking out
 7   from underneath the clothes rack, correct?
 8   A.  That's correct.
 9   Q.  The clothes rack where this puddle was
10   hidden underneath, were you looking through the
11   clothes on that rack at the time you fell?
12   A.  I think I was just looking at pocketbooks
13   ahead, going towards the bags.  I'm not looking at
14   clothes.
15   Q.  So do you believe you were simply walking
16   by this clothing rack?
17   A.  Yes.
18   Q.  And then you fell?
19   A.  Yes.
20   Q.  You weren't going through the clothes on
21   the rack and looking at the clothes on that
22   particular rack, correct?
23   A.  No, that's correct, yes.
```

*See* of Exhibit "D," at Pages 102, line 12 to Page 104, line 23.

   11. On May 15, 2019, Rick Gladysz, Assistant Manager at Marshalls, was deposed and testified to the following:

```
                                          Page 45
1   Q   Okay. Are you way of anyone, at any
2   point, reporting any liquid or substance on the
3   floor in that area prior to the fall?
4   A   No.
```

*See* relevant portions of deposition transcript of Rick Gladysz, taken on May 15, 2019, a true and correct copy of which is attached hereto as Exhibit "E."

4

12. The liquid was a clear silver polish cleaner. *See* Exhibit "E," at Pages 40, line 19 - Page 41, line 6.

13. On June 27, 2019, an Arbitration Award was issued in favor of Defendant, and against Plaintiff. *See* Arbitration Award attached hereto as Exhibit "F."

14. On July 15, 2019, Plaintiff appealed the Arbitration Award and demanded a jury trial. *See* Trial De Novo attached hereto as Exhibit "G."

        Respectfully submitted,

        BONNER KIERNAN TREBACH & CROCIATA, LLP

BY: *James F. Lynn*
        JAMES F. LYNN, ESQUIRE
        Attorney for Defendant

**BONNER KIERNAN TREBACH & CROCIATA LLP**
**BY: JAMES F. LYNN, ESQUIRE**
**IDENTIFICATION NO: 53838**
**TEN PENN CENTER, SUITE 770**
**1801 MARKET STREET**
**PHILADELPHIA, PA  19103**
**(215) 569-4433**
*Attorney for Defendant, Marmaxx Operating Corp. (Improperly named as TJX Companies/Marshalls)*

| | |
|---|---|
| MARLENE VARANAVAGE | IN THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA |
| Plaintiff | |
| v. | CIVIL ACTION NO. 2:19-cv-00461-JHS |
| TJX COMPANIES/MARSHALLS | |
| Defendant | |

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, MARMAXX OPERATING CORP. (IMPROPERLY NAMED AS TJX COMPANIES/MARSHALLS)**

Defendant, Marmaxx Operating Corp. (improperly named as TJX Companies/Marshalls) (hereafter "Moving Defendant"), by and through its attorneys, BONNER KIERNAN TREBACH & CROCIATA, LLP, hereby files this Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56, and in support thereof, avers as follows:

**I.      PROCEDURAL HISTORY AND STATEMENT OF FACTS**

1.      On January 4, 2019, Plaintiff initiated this action by filing a Complaint in the Philadelphia Court of Common Pleas. *See* Plaintiff's Complaint attached hereto as Exhibit "A."

2.      In her Complaint, Plaintiff improperly named TJX Companies/Marshalls as Defendant. *See* Exhibit "A," at ¶¶2.

3.      The proper Defendant is Marmaxx Operating Corp., which operated the store. *See* Answer of Defendant, Marmaxx Operating Corp. (Improperly named as TJX Companies/Marshalls) to Plaintiff's Complaint with Affirmative Defenses attached hereto as Exhibit "B."

4.Plaintiff, Marlene Varanavage, contends that on January 24, 2017, she was caused to slip and fall by reason of coming in contact with a clear liquid on the floor of the Marshalls retail store (hereafter "Marshalls"), located at 9169 Roosevelt Boulevard, Philadelphia, Pennsylvania. *See* Exhibit "A," at ¶¶3-7.

5.The liquid at issue in this case was a clear silver polish cleaner. *See* Pages 40, line 19 - Page 41, line 6 of deposition transcript of Rick Gladysz attached hereto as Exhibit "E."

6.Plaintiff is seeking damages for bodily injuries she allegedly sustained as a result of the slip and fall. *See* Exhibit "A," at ¶¶11.

7.On January 31, 2019, Moving Defendant timely and properly removed this matter based upon diversity jurisdiction under 28 U.S.C. 1332. *See* Notice of Removal attached hereto as Exhibit "C."

8.On June 27, 2019, an Arbitration Award was issued in favor of Defendant, and against Plaintiff. *See* Arbitration Award attached hereto as Exhibit "F."

9.On July 15, 2019, Plaintiff appealed the Arbitration Award and demanded a jury trial. *See* Trial De Novo attached hereto as Exhibit "G."

10.During her deposition, Plaintiff testified, in pertinent part, as follows with regard to the alleged condition that caused her fall:

```
24    Q.    Did you spill this stainless steel cleaner
```

7

```
                                                               Page 105
 1   on the floor?
 2     A.   No.
 3     Q.   Do you know who did?
 4     A.   No.
 5     Q.   Do you know how long it was there?
 6     A.   No.
 7     Q.   Do you have any evidence that an employee
 8   of Marshalls spilled this on the floor?
 9     A.   No.
10     Q.   Do you have any idea, was there anything
11   about -- let me ask you this. My understanding is,
12   based upon your testimony, that you were not looking
13   down, you were looking at clothes?
14     A.   Uh-huh.
15     Q.   Correct?
16     A.   Yeah.
17     Q.   So you didn't see this on the floor,
18   correct?
19     A.   Correct.
20     Q.   Is it also you didn't see it on the floor
21   because it was clear? Do you know if that's one of
22   the reasons?
23     A.   Probably, yeah, it was clear.
24     Q.   Did you see any anything -- was there
```

```
                                                               Page 106
 1   anything about this puddle that would lead you to
 2   believe how long it may have been there?
 3     A.   No.
 4     Q.   Would you agree with me that it's
 5   impossible for anyone to know how long that puddle
 6   was there before you actually stepped upon it?
 7     A.   Yes.
 8     Q.   As you sit here today, do you have any
 9   evidence that any employee of Marshalls was aware
10   that that puddle was there before you reported it?
11     A.   No.
```

*See* Exhibit "D," at Page 104, line 24 to Page 106, line 11 for deposition transcript of Plaintiff, Marlene Varanavage, taken on April 30, 2019.

    11.    Rick Gladysz, Assistant Manager at Marshalls, testified that he did not receive any reports of any liquid or substance on the floor in that area prior to the fall.

```
                                        Page 45
 1     Q   Okay. Are you way of anyone, at any
 2   point, reporting any liquid or substance on the
 3   floor in that area prior to the fall?
 4     A   No.
```

*See* relevant portions of deposition transcript of Rick Gladysz, taken on May 15, 2019, a true and correct copy of which is attached as Exhibit "E."

12. Moreover, Plaintiff admitted that she was not looking at the ground while walking and therefore, could not describe the size of the liquid spill on the aisle floor. Specifically, Plaintiff testified:

```
12   Q.   How much of that puddle was hidden
13   underneath the clothes racks and how much of that
14   puddle was exposed?
15   A.   Most of it was hidden under the rack.
16   Q.   How much of the puddle was actually
17   outside of the clothing rack?
18   A.   I guess about like nine to ten inches,
19   approximately.
20   Q.   So now you're saying that --
21   A.   I'm just trying to figure this out in my
22   head because I wasn't looking down. I'm looking at
23   clothes. So when I fell, when I looked down, there
24   was an oil substance on the floor. So it's on my
```

```
                                              Page 103
1    coat. It's on my pants. I can't give you an exact
2    dimension of how much oil was on the floor.
3    Q.   Well, you did do that. Listen, you told
4    me that the puddle, once fully exposed, was about 14
5    to 16 inches wide --
6    A.   Right.
7    Q.   -- and 14 to 16 long or high, however you
8    want to describe it.
9    A.   Right.
10   Q.   You also told me that the majority of that
11   puddle, before the clothes rack was removed, was
12   hidden underneath the clothes rack, correct?
13   A.   Right.
14   Q.   Then what I'm trying to figure out was how
15   much of it was exposed onto the actual walkway?
16   A.   I'm not sure. Actually, I'm not sure.
17   Q.   But still most of it was hidden
18   underneath, only some of it was sticking out because
19   you know you slipped on it?
20   A.   Exactly, yes.
21   Q.   The first time you saw it was -- was the
22   first time you saw the liquid on the floor only
23   after the clothes rack was moved?
24   A.   Yes.
```

```
                                                              Page 104
 1    Q.   So then once the clothes rack's removed,
 2  you really didn't have an opportunity to see the
 3  puddle before the clothes rack was removed, correct?
 4    A.   That's correct.
 5    Q.   That is why it makes it difficult for you
 6  to estimate how much of it was actually sticking out
 7  from underneath the clothes rack, correct?
 8    A.   That's correct.
 9    Q.   The clothes rack where this puddle was
10  hidden underneath, were you looking through the
11  clothes on that rack at the time you fell?
12    A.   I think I was just looking at pocketbooks
13  ahead, going towards the bags. I'm not looking at
14  clothes.
15    Q.   So do you believe you were simply walking
16  by this clothing rack?
17    A.   Yes.
18    Q.   And then you fell?
19    A.   Yes.
20    Q.   You weren't going through the clothes on
21  the rack and looking at the clothes on that
22  particular rack, correct?
23    A.   No, that's correct, yes.
```

*See* Exhibit "D," at Pages 102-104.

       13.    Because Plaintiff cannot produce any evidence as to the source of the liquid, how long the liquid was present, or that any employee of Moving Defendant knew of the presence of the liquid prior to her fall, she has failed to meet her burden to establish a prima facie claim for negligence.

      14.    As a result, for the reasons set forth herein, this Honorable Court should enter judgment as a matter of law in favor of Moving Defendant.

## II. LEGAL ARGUMENT

### A. Standard of Review

      15.    Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c), *Levy v. Sterling Holding Co., LLC*, 544 F.3d 493, 501 (3d Cir. 2008).

16. A dispute is "genuine" if there is sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party, and a factual dispute is "material" if it might affect the outcome of the case under governing law. *Kaucher v. County of Bucks*, 455 F. 3d 418, 423 (3rd Cir. 2006)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3rd Cir. 2011).

17. Under Fed. R. Civ. P. 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Marten v. Godwin*, 499 F.3d 290, 295 (3rd Cir. 2007). "[U]nsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010)(citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 461 (3rd Cir. 1989).

A. **SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFF CANNOT MEET HER BURDEN OF PROOF AND PROVE THAT MOVING DEFENDANT CREATED THE CONDITION OR THAT MOVING DEFENDANT HAD NOTICE OF THE CONDITION.**

18. Moving Defendant is entitled to summary judgment because Plaintiff cannot establish or provide evidence that Moving Defendant created the condition or that Moving Defendant had requisite notice of the condition.

19. A federal court sitting in diversity must apply the substantive law of the forum state. *First State Underwriters Agency of New England Reinsurance Corp. v. Travelers Insurance Company*, 803 F.2d 1308, 1316 (3rd Cir. 1986)(citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817 (1938)). Thus, Pennsylvania law is applicable here.

20. In order to show that a defendant breached its duty of care to keep its premises free from hazardous conditions, an "invitee must prove either the **proprietor of the land had a**

**hand in creating the harmful condition, or he had actual or constructive notice of such condition**." *Thomas v. Family Dollar Stores of Pa., LLC*, No. 17-4989, 2018 U.S. Dist. LEXIS 196569, at *10 (E.D. Pa. Nov. 19, 2018) (citation omitted); *see Swift,* 456 Pa. Super. 330, 336, 690 A.2d 719 (1997).

21. "**Constructive notice requires proof that the relevant condition was present long enough that, in the exercise of reasonable care, the defendant should have known of its presence**." *Murray*, supra, 2009 U.S. Dist. LEXIS 82487, *5-*6 (E.D. Pa. 2009) (citing *Martino v. Great Atl. & Pac. Tea. Co.*, 419 Pa. 229, 213 A.2d 608, 610 (1965)).

22. **More than mere speculation is required to establish constructive notice**. *Felix v. GMS*, 501 Fed. Appx. 131, 136 (3rd Cir. 2012).

23. In the instant action, Plaintiff cannot meet her burden of proof.

24. With regard to notice, Plaintiff testified that she cannot provide any evidence pertaining to how long the spill was on the floor or that Moving Defendant had a hand in creating the harmful condition. *See* Exhibit "D," at Page 104, line 24 to Page 106, line 11.

25. Additionally, Rick Gladysz, Assistant Manager at Marshalls, testified that he did not receive any reports of any liquid or substance on the floor in that area prior to the fall. *See* Deposition Testimony of Rick Gladysz, Page 45, Lines 1-4, attached hereto as Exhibit "E."

26. Since Plaintiff has no evidence to support any claim that Moving Defendant had actual or constructive notice, Moving Defendant is entitled to an entry of Summary Judgment in its favor.

B. **PLAINTIFF CANNOT RECOVER BECAUSE OF HER OWN COMPARATIVE NEGLIGENCE.**

27. "It is hornbook law in Pennsylvania that a person must look where he [or she] is going." *Graham v. Moran Foods, Inc.*, No. 11-239, 2012 U.S. Dist. LEXIS 69667, 2012 WL

1808952, at *4 (E.D. Pa. May 18, 2012) (quoting *Villano v. Sec. Sav. Ass'n*, 268 Pa. Super. 67, 407 A.2d 440, 441 (Pa. Super. Ct. 1979)) (rejecting argument that business invitee was distracted from hazardous condition because of in-store sale signs).

28. "[J]ust as drivers are not relieved of responsibility for accidents if they are distracted by billboards, customers are not relieved of the responsibility of watching for obstacles while they walk, even if they are distracted by sales displays." *Id*. (quoting *Campisi v. Acme Mkts., Inc.*, 2006 PA Super 368, 915 A.2d 117, 121 (Pa. 2006)).

29. Furthermore, Plaintiff cannot recover against Moving Defendant as a result of her own comparative negligence as she testified that she was not looking where she was walking at the time of the incident, and was looking at the clothes prior to her fall. *See* Pages 102-104 of Exhibit "D."

**WHEREFORE**, Moving Defendant, Marmaxx Operating Corp. (improperly named as TJX Companies/Marshalls), respectfully requests that this Honorable Court grant its Motion for Summary Judgment and enter the attached proposed Order dismissing Plaintiff's claims against it, with prejudice.

        Respectfully submitted,

        BONNER KIERNAN TREBACH & CROCIATA, LLP

    BY:_____
        JAMES F. LYNN, ESQUIRE
        Attorney for Defendant